IN THE

# SUPREME JUDICIAL COURT,

IN THE

# COUNTY OF KENNEBEC,

ARGUED AT MAY TERM, 1842.

The Northern Bank *versus* Reuel Williams.

If a bank, having discounted an indorsed bill, sends it to another bank for collection, and that bank to a third for the same purpose, by which a demand is made on the acceptor through a notary, who makes his protest and prepares a notice to the indorser, which is sent with the protest back to the second bank; the protest must be regarded as containing notice of the dishonor of the bill, and the keeping them on hand till the second day after the receipt thereof, without forwarding any notice of the contents to the indorser, is an unreasonable delay which discharges his liability as indorser.

Assumpsit on two drafts, or bills, each dated July 2, 1836, drawn by J. P. Lee on R. M. N. Smyth, payable in ninety days from date and to the order of Lee, indorsed by him, by Jesse Aiken, and the defendant, accepted by Smyth and discounted by the plaintiffs. They were afterwards indorsed by the cashier of the plaintiffs and of other banks. Smyth, the acceptor, lived at Bangor. The parties agreed upon a statement of facts, the substance of which will be found at the commencement of the opinion of the Court.

In relation to the point on which the decision rests : —

*Emmons*, for the plaintiffs, argued, that it was competent for the notary, who made the protest, to prepare and send

the notices to the respective parties. 3 Kent, 107 ; Bayley on Bills, 205, 269. An agent for collection is to be treated in all respects, as to giving and receiving notice as the real holder of the bill or draft. It is not necessary that the bill and the protest and notices, or either, should go together. If the papers are seasonably put into the right post office, with proper directions, it is sufficient. The risk of failure is upon the other party. Bayley, 275; 3 Kent, 108 ; 2 H. Black, 509; 1 Pick. 40L; 6 Mass. R. 316 ; 15 Maine R. 207. The cashier of the Fulton Bank was entitled to one day to send to the next party to the bill. Bayley, 263; *Farmer* v. *Rand*, 16 Maine R. 455. He however did send by the first mail, and that was on the day following.

*J. H. Williams*, for the defendant, argued that it was the duty of the Fulton Bank to have put the notice of the dishonor of the bill into the post office in season for the next mail after receiving it. This should have been done immediately on the reception of the protest. This is sufficient evidence of the dishonor of the draft, and indeed the best evidence. They were not entitled to retain the notice prepared by the notary a day ; first, because the Fulton Bank were the mere agents of the plaintiffs, and are not to be considered as a party ; and second, because they transmitted no notices of their own, but merely forwarded the notices prepared for their hand by the notary, and sent to them from Bangor. *Freeman's Bank* v. *Perkins*, 6 Shepl. 292 ; 3 Kent, 108 ; 5 Shepl. 365 ; 8 Pick. 51 ; 4 B. & A. 454; Chitty on Bills, (8th Am. Ed.) 523 ; 2 Johns. R. 254.

The opinion of the Court was drawn up by

WHITMAN C. J. — The plaintiffs discounted the drafts declared on, and claim to recover the amount of them of the defendant as an indorser of them. He resists payment upon the ground, that he was not duly notified of their non-payment by the acceptor. The facts agreed upon between the parties are, that the drafts were accepted by one Smyth, of Bangor, and indorsed in blank by the defendant ; and were, after

being indorsed by the cashier of the plaintiffs, sent to the
Fulton Bank in Boston for collection; and were by the Fulton
Bank, after being indorsed by their cashier, forwarded to the
Commercial Bank at Bangor for the same purpose; where
when at maturity they were, by a notary selected for the pur-
pose, presented to the acceptor for payment; and being dis-
honored were duly protested. On the third of October, 1836,
the day of the protest, the notary prepared notices for the
drawer and indorsers; and, on the same day, put them into
the post office at Bangor, directed to the cashier of the Fulton
Bank in Boston; but were post-marked as mailed on the fourth
of the same month. The protest and drafts were enclosed in
a letter, on the same fourth of October, and put into the same
post office on that day, and marked as mailed on the fifth of
the same month. This letter reached the Fulton Bank one
day earlier than the one enclosing the notices. On the day
following the receipt of the notices, being the eighth of Octo-
ber, the notices, drafts and protest were despatched, by the
cashier of the Fulton Bank, to the plaintiffs at Hallowell,
where they arrived on the tenth of October; and the notice to
the defendant was, on the same day, delivered to him. The
mail from Bangor for Boston was despatched daily; and pass-
ed through Augusta, where the defendant lived, and through
Hallowell, the seat of business of the plaintiffs.

Upon this state of facts, two questions have been presented
for our consideration; First: — Was the transmission of the
notices and protest to the Fulton Bank, and thence to the
plaintiffs, a course of procedure recognised by mercantile law
and usage, as sufficient to secure the liability of the defend-
ant? Second: — Was the omission by the Fulton Bank to
forward notice, on the receipt of the protest, till the second
day after it had been received, an unreasonable delay? As to
the first proposition, we have not thought it necessary, that we
should come to any conclusion concerning it; being of opinion
that the defence is clearly maintainable upon the latter. The
protest must be regarded as containing ample notice of the
dishonor of the drafts; and the keeping it on hand till the

second day after the receipt of it, without forwarding any notice of its contents to the defendant, was an unreasonable delay, which discharges the defendant from his liability as in-dorser of the drafts. The citation of authorities cannot be necessary to sustain this position.

*Plaintiff's nonsuit.*